[Docket Nos. 61, 63, 81]

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| SELECTIVE INSURANCE COMPANY OF AMERICA,<br><br>        Plaintiff,<br><br>   v.<br><br>CHRISTEYNS LAUNDRY TECHNOLOGY, LLC, et al.,<br><br>        Defendants. | Civil No. 19-11723 (RMB/AMD)<br><br>**OPINION** |

**RENÉE MARIE BUMB, United States District Judge**

This matter comes before the Court on the Motion for Summary Judgment brought by Third-Party Defendant Lavatec Laundry Technology, Inc. ("Lavatec") [Docket No. 61], the Motion to Seal brought by Lavatec [Docket No. 63], and the Motion for Summary Judgment brought by Defendant/Third-Party Plaintiff Christeyns Laundry Technology, LLC ("Christeyns") [Docket No. 81]. For the reasons expressed below, the Court will grant Lavatec's Motions and deny Christeyns' Motion.

I.    **FACTUAL BACKGROUND**

This case stems from the malfunction of a commercial laundry machine. Intervenor Plaintiff Clean Green Textile Services, LLC, t/a Single Source Laundry Solution ("Clean

Green") provides commercial laundry cleaning services, primarily to hotels in southern New Jersey. Clean Green is insured by Selective. In approximately August 2016, Clean Green purchased a Lavatec Tunnel Washer LT 35-10 BT ("the Tunnel Washer") from Lavatec. The Tunnel Washer has various chambers, some of which are separated by ethylene propylene diene monomer rubber seals ("EPDM seals").

    Christeyns "sells detergents and installs chemical dispensing systems for use by industrial laundry facilities like Clean Green." [Docket No. 81-1, ¶ 6.] In approximately April 2016, Clean Green and Christeyns executed "a Supply Agreement whereby Clean Green agreed . . . to purchase various detergents and chemicals exclusively from Christeyns." [Id., ¶ 13.] Christeyns also provided the systems by which the detergents and chemicals would be dispensed into the Tunnel Washer ("the Dispensing System"). The Dispensing System, including the control card, was a product of Third-Party Defendant Softrol Systems, Inc. Clean Green contends that it bargained for all new equipment from Christeyns. In fact, Christeyns provided used equipment, including the Dispensing System and control card.

    The Supply Agreement also had several clauses relating to what damages the parties would be permitted to seek from one another in the event of a lawsuit. This included the "Limitation of Liability" clause, which read in full:

2

> WITHOUT IN ANY WAY LIMITING THE PROVISIONS OF THIS AGREEMENT, NEITHER PARTY SHALL HAVE LIABILITY TO THE OTHER FOR ANY ANTICIPATORY OR LOST PROFIT, SPECIAL, CONSEQUENTIAL, PUNITIVE, EXEMPLARY, INCIDENTAL, OR INDIRECT DAMAGES OF ANY KIND (COLLECTIVELY "NON-DIRECT DAMAGES") RESULTING FROM THE PERFORMANCE OR NON-PERFORMANCE OF ITS OBLIGATIONS UNDER THIS AGREEMENT EVEN IF THOSE NON-DIRECT DAMAGES ARE: ATTRIBUTED TO BREACH OF THIS AGREEMENT, TORT, NEGLIGENCE, OR OTHER CAUSE; EVEN IF THE PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF NON-DIRECT DAMAGES; OR EVEN IF, UNDER APPLICABLE LAW, NON-DIRECT DAMAGES ARE CONSIDERED DIRECT DAMAGES.

[Docket No. 81-9, ¶ 8.1.] The Supply Agreement also included a Massachusetts choice of law provision and a merger clause. [Id. ¶¶ 8.5, 8.7.]

Clean Green started using the Dispensing System in September 2016. According to Clean Green, the Dispensing System malfunctioned in December 2016, resulting in an excessive amount of bleach being pumped into the Tunnel Washer. Shortly thereafter, in January 2017, linens began to exhibit small black dots after being washed in the Tunnel Washer. According to Clean Green, the black dots were the result of the excessive amounts of bleach interacting with the EPDM seals and causing them to deteriorate. The black dots, unsurprisingly, rendered the linens unusable by Clean Green's clients.

Clean Green reported the initial malfunction to Christeyns in December 2016. It reported the black dots in January 2017. Clean Green contends that Christeyns did not adequately investigate the issue until October 2017, at which point Clean

3

Green alleges Christeyns advised "that the cause of the black dots damaging the linen was likely a degradation of the seals in the Lavatec Tunnel caused by the bleach being pumped into the Lavatec Tunnel as a result of the defect in the Christeyns dispensing system and the failure of the Softrol control card." [Docket No. 84-1, ¶ 18.] Christeyns denies this characterization. [Docket No. 92, ¶ 18.] Even so, Clean Green contends that Christeyns failed in several ways to address the issue with the Dispensing System, including by allegedly intentionally removing and destroying the control card, which would have had valuable information about the precise failings of the unit. Due to Christeyns' alleged actions and inactions, Clean Green claims to have sustained approximately $2.5 million in damages.

Conversely, Lavatec and Clean Green more promptly addressed their shared concerns by way of a settlement agreement dated September 1, 2017 (the "Settlement Agreement"). [Docket No. 62-1, Exhibit E.] The Settlement Agreement noted that Clean Green had "demanded damages from Lavatec in connection with the performance of the Lavatec Tunnel Washer 35-10 BT that [Clean Green] purchased from Lavatec ('Demand')." [Id.] It also included the following release clause:

> Except for obligations created by or arising out of this Agreement, [Clean Green] and Lavatec fully and forever release and discharge each other and each and

4

> every one of their partners, members, directors, shareholders, employees, officers, affiliates, marketing partners, related parent and subsidiary entities, insurance carriers, publishers, representatives, agents, and attorneys of any and all debts, liabilities, judgments, verdicts, penalties, demands, liens, obligations, promises, acts, contracts, costs, accountings, expenses, attorneys' fees, damages, actions and causes of action of every kind, nature, character and description existing before and/or as of the Effective Date of this Agreement, whether known or unknown, foreseeable or unforeseeable, suspected or unsuspected, that directly or indirectly related to, arise out of, or stem from the provision of services to [Clean Green] by Lavatec, the comments to YourLinenService.com, or the Demand.

[Id.]

Finally, Selective, Clean Green's insurer, paid $950,504.02 to Clean Green to settle its claims. [Docket No. 81-13.]

## II. PROCEDURAL HISTORY

Selective initially filed this suit against Christeyns in the Superior Court of New Jersey, Law Division, Camden County on March 28, 2019. [Docket No. 1-1.] Selective, as the subrogee of Clean Green, pled four counts against Christeyns: products liability, negligence, breach of warranty, and "ultrahazardous activity." [Docket No. 1-1.] Selective sought $950,504.02 in damages, plus interest, costs, and fees.

On April 29, 2019, Christeyns removed the case to this Court. [Docket No. 1.] Clean Green then filed a Motion to Intervene on September 9, 2019, which the Honorable Ann Marie Donio granted on September 26, 2019. [Docket Nos. 16, 20.] The

Intervenor Complaint asserted the same four claims against Christeyns — products liability, negligence, breach of warranty, and "ultrahazardous activity" — in addition to claims for breach of contract, breach of covenant of good faith and fair dealing, and fraud. [Docket No. 21.] Christeyns answered the Intervenor Complaint on November 12, 2019, at which time it also filed a Third-Party Complaint against Lavatec and Softrol. [Docket No. 25.] Christeyns' Third-Party Complaint pled two counts against both Lavatec and Softrol: contribution and common law indemnity. [Id.] On January 13, 2020, Softrol filed its answer to Christeyns' Third-Party Complaint and asserted crossclaims of contribution and indemnification against Christeyns and Lavatec. [Docket No. 50.] On March 4, 2020, Lavatec also filed its answer to Christeyns' Third-Party Complaint. [Docket No. 59.] On March 9, 2020, Softrol filed its answer to Lavatec's crossclaims. [Docket No. 60.]

Also on March 9, 2020, Lavatec filed its Motion for Summary Judgment, which is currently pending before the Court. [Docket No. 61.] In that Motion, Lavatec seeks the dismissal of all crossclaims against it by Christeyns. [See Docket No. 62, at 7-8.] Christeyns filed its brief in opposition on April 6, 2020. [Docket No. 69.] Softrol also filed a brief in opposition on May 4, 2020. [Docket No. 77.] Lavatec filed its replies on May 15,

2020. [Docket Nos. 78, 79.] Lavatec also filed a Motion to Seal, which is unopposed, on March 13, 2020. [Docket No. 63.]

On May 22, 2020, Christeyns filed its Motion for Summary Judgment, in which it seeks a ruling limiting the types of damages sought by Clean Green pursuant to the Limitation of Liability clause in their Supply Agreement. [Docket No. 81.] Clean Green filed its response in opposition on June 22, 2020, which Selective joined. [Docket Nos. 84, 95.] Christeyns filed its Reply on July 6, 2020. [Docket No. 92.][1]

**III. JURISDICTION**

The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1367.[2]

**IV. STANDARD OF REVIEW**

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the

---

[1] Clean Green also filed a Motion to Amend on June 22, 2020. [Docket No. 85.] Christeyns opposed that Motion. [Docket No. 94.] Judge Donio denied that Motion without prejudice on October 9, 2020, pending resolution of the currently pending Motions for Summary Judgment. [Docket No. 103.]

[2] Selective is a New Jersey corporation with its principal place of business in New Jersey. [Docket No. 1-1, ¶ 2.] Christeyns is a Limited Liability Corporation with two partners: Christeyns Holding, Inc., and Rudi Moors. [Docket No. 25, at 14, ¶ 7.] Christeyns Holding, Inc., is a Delaware corporation with its principal place of business in East Bridgewater, Massachusetts. [Id. at 14, ¶ 8.] Rudi Moors is a resident of South-Easton, Massachusetts. [Id. at 14, ¶ 9.] The remaining parties' claims arise out of a common nucleus of operative fact.

movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" only if it might impact the "outcome of the suit under the governing law." Gonzalez v. Sec'y of Dep't of Homeland Sec., 678 F.3d 254, 261 (3d Cir. 2012). A dispute is "genuine" if the evidence would allow a reasonable jury to find for the nonmoving party. Id.

The movant has the initial burden of showing through the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits "that the non-movant has failed to establish one or more essential elements of its case." Connection Training Servs. v. City of Phila., 358 F. App'x 315, 318 (3d Cir. 2009). "If the moving party meets its burden, the burden then shifts to the non-movant to establish that summary judgment is inappropriate." Id.

In the face of a properly supported motion for summary judgment, the non-movant's burden is rigorous. They "must point to concrete evidence in the record"; mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment. Orsatti v. N.J. State Police, 71 F.3d 480, 484 (3d Cir. 1995); accord Jackson v. Danberg, 594 F.3d 210, 227 (3d Cir. 2010) (noting that "speculation and conjecture may not defeat summary judgment") (citing Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 228 (3d Cir. 2009)).

**V.    ANALYSIS**

8

The Court will address each of the parties' motions in turn.

### A. Lavatec's Motion for Summary Judgment

As noted above, Christeyns' Third-Party Complaint alleges that Lavatec is liable for contribution and indemnification. Lavatec's Motion seeks summary judgment in Lavatec's favor on those counts. Lavatec argues that the Settlement Agreement is "clear and unambiguous" and bars the third-party claims of contribution. Christeyns and Softrol counter with arguments that the Motion is premature; that the scope of the Settlement Agreement does not cover the circumstances at issue here; and the Settlement Agreement only binds Lavatec and Clean Green, not Christeyns or Softrol. With respect to the indemnification claims, Lavatec argues that Christeyns and Softrol have failed to allege sufficient facts to support such claims.

#### 1. Contribution Claims

The Court will first address the arguments pertaining to the scope of the Settlement Agreement. In New Jersey, "settlement with a joint tortfeasor . . . bars an action for contribution against the settling wrongdoer." Theobald v. Angelos, 208 A.2d 129, 131 (N.J. 1964). Therefore, the principal issue to resolve is whether or not the Settlement Agreement between Lavatec and Clean Green resolves the claims at issue in this case. If it does, then the crossclaims against Lavatec

9

would be barred. If it does not, then the crossclaims against Lavatec would not be barred.

Christeyns and Softrol argue that the Settlement Agreement is vague and ambiguous, and that more discovery is required to determine the Settlement Agreement's full scope and whether it includes the claims asserted here. [See Docket no. 69, at 3-5; Docket No. 77, at 16.] As the Third Circuit has held that "a court 'is obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery.'" Doe v. Abington Friends Sch., 480 F.3d 252, 257 (3d Cir. 2007) (quoting Dowling v. City of Phila., 855 F.2d 136, 139 (3d Cir. 1988)). However, as Lavatec points out in its Reply, the Court is not precluded from granting summary judgment if the party opposing summary judgment does not have an availing affirmative defense. See IT Trailblazers LLC v. FrontierBPM, LLC, Civil Action No. 19-14051, 2019 WL 3290861, at *5 (D.N.J. July 22, 2019) ("Since each of Defendant's affirmative defenses are unavailing, the lack of substantial discovery does not preclude the grant of summary judgment.").

Whether Christeyns and Softrol have availing affirmative defenses depends on the validity and scope of Lavatec's Settlement Agreement. In New Jersey, "[a]n agreement to settle litigation is 'governed by [the general] principles of contract law.'" Globe Motor Co. v. Igdalev, 139 A.3d 57, 64 (N.J. 2016)

10

(second alteration in original) (quoting Brundage v. Estate of Carambio, 951 A.2d 947, 961 (N.J. 2008)). "Where a contract is ambiguous, courts will consider the parties' practical construction of the contract as evidence of their intention and as controlling weight in determining a contract's interpretation; where the terms of a contract are clear, however, the court must enforce it as written." County of Morris v. Fauver, 707 A.2d 958, 969 (N.J. 1998). This is a question of law for the Court to decide. See Globe Motor Co., 139 A.3d at 64-65.

Applying the above principles to this case, additional discovery would only be necessary if the terms of the Settlement Agreement are ambiguous, such that extrinsic evidence is required for the Court to interpret it. Conversely, if the Settlement Agreement is clear, then no additional discovery will be required; instead, the Court will simply analyze the terms and determine whether or not they encompass the claims alleged in this case.

As noted above, the Settlement Agreement precluded Clean Green from pursuing legal action against Lavatec for "causes of action of every kind, nature, character and description existing before and/or as of the Effective Date of this Agreement, whether known or unknown, foreseeable or unforeseeable, suspected or unsuspected, that directly or indirectly related

11

to, arise out of, or stem from," among other things, Clean Green's demand for "damages from Lavatec in connection with the performance of the Lavatec Tunnel Washer 35-10 BT that [Clean Green] purchased from Lavatec." [Docket No. 62-1, Exhibit E.] While this is a broad agreement, to be sure, it is far from ambiguous. By its plain meaning, Clean Green cannot sue Lavatec for any issues with the performance of the Tunnel Washer that existed, whether known or unknown, when the parties signed the Settlement Agreement. Those terms are unambiguous. Moreover, they include the allegations being made in this lawsuit.

Christeyns and Softrol argue unconvincingly against the above conclusions. First, Christeyns argues that the claims at issue in this case are not covered by the Settlement Agreement because, it argues, Clean Green did not discover the damage to the EPDM seals until after the Settlement Agreement's effective date. [Docket No. 69, at 2.] Christeyns also argues that "the damages alleged [in this case] did not arise until November or December of 2017." [Id. at 2-3.]

These arguments are unavailing because of the undisputed facts of this case and the terms of the Settlement Agreement. The incidents that gave rise to this suit occurred, by all accounts, in late 2016 and early 2017 — months prior to the effective date of the Settlement Agreement. When Clean Green learned about the EPDM seals is irrelevant because of the broad

12

language of the Settlement Agreement. The fact of the matter is that the claim existed prior to September 1, 2017, and the Settlement Agreement explicitly bars existing claims even if they were "unknown" at the time of its execution. Therefore, Christeyns' argument, even if true, is irrelevant. The claims existed prior to the Settlement Agreement's effective date; therefore, they are barred.

Softrol, too, makes an unsuccessful argument that the terms of the Settlement Agreement do not cover the claims of this case because the Settlement Agreement refers to the "provision of services" by Lavatec to Clean Green. [Docket No. 77, at 7.] However, this argument simply cherry-picks language and completely ignores the fact that the Settlement Agreement also refers to the performance of the Tunnel Washer itself. Therefore, Softrol's argument fails.

In sum, the Settlement Agreement is unambiguous as a matter of law, and it covers the claims in this case, based on the plain meaning language of its terms. Christeyns' and Softrol's arguments that more discovery is needed and/or that the Settlement Agreement does not cover the claims in this case are unconvincing. Therefore, pursuant to New Jersey precedent, the

Court will hold that any crossclaims against Lavatec for contribution are barred.[3]

### 2. Indemnification Claims

Both Christeyns and Softrol also raised crossclaims of common law indemnification against Lavatec. Lavatec's Motion for Summary Judgment seeks summary judgment in its favor with respect to Christeyns' claim. [Docket No. 62, at 13-17.]

In New Jersey, common law indemnification requires that the "party seeking indemnification [must] set forth a sufficient legal relationship between itself and the third party defendant," such as employer-employee or principal-agent. Poltrock v. NJ Automotive Accounts Mgmt. Co., Inc., Civil Action No. 3:08-cv-1999, 2008 WL 5416396, at *9 (D.N.J. Dec. 22, 2008). Here, neither Christeyns nor Softrol allege sufficient facts in their crossclaims to give rise to an indemnification claim. In fact, Christeyns apparently conceded this argument by failing to address it in its Response to Lavatec's Motion. [See Docket No. 69.] Softrol, for its part, simply requested that any dismissal against Christeyns' claims be ruled "not an adjudication on the

---

[3] The Court appreciates that Lavatec's Motion only seeks summary judgment with respect to Christeyns' crossclaims. However, given that Softrol took the opportunity to respond in opposition to the Motion and that the analysis is no different for either party with respect to the contribution claims, the Court will grant summary judgment in Lavatec's favor with respect to both parties' contribution claims.

14

merits," so that Softrol could pursue its crossclaims at trial. [Docket No. 77, at 16-17.]

In any event, both parties failed "to allege any special legal relationship, such as an agency relationship," between themselves and Lavatec. This failure means that the indemnification claims fail as a matter of law. See Poltrock, 2008 WL 5416396, at *9. Therefore, the Court will grant summary judgment in favor of Lavatec on these claims.[4]

### 3. Conclusion

In sum, the Court will grant summary judgment in favor of Lavatec with respect to all crossclaims filed against it by both Christeyns and Softrol. However, the parties are all in agreement that Lavatec, pursuant to New Jersey law, should be included as a joint tortfeasor on the verdict sheet for purposes of apportionment. [See, e.g., Docket No. 62, at 13.] There is no reason, however, for Lavatec to remain a party to this lawsuit once all claims against it have been dismissed. Therefore, the

---

[4] As with the contribution claim, the Court recognizes that Lavatec's Motion only addresses Christeyns' indemnification claim. However, the Court once again finds no distinction between the analyses of the indemnification claims, and therefore will grant summary judgment in Lavatec's favor as to both claims. Moreover, despite Softrol's request that the Court deem its rulings against Christeyns as "not an adjudication on the merits," Softrol offers no valid basis for such a decision by the Court.

15

Court will dismiss Lavatec from this suit, but will permit Lavatec to be included on the verdict sheet at trial.[5]

### B. Lavatec's Motion to Seal

Pursuant to Local Civil Rule 5.3(c)(2), a Motion to Seal

> Shall describe (a) the nature of the materials or proceedings at issue, (b) the legitimate private or public interests which warrant the relief sought, (c) the clearly defined and serious injury that would result if the relief sought is not granted, and (d) why a less restrictive alternative to the relief sought is not available.

L. CIV. R. 5.3(c)(2). The Court hereby finds that Lavatec's Motion to Seal, which is unopposed, satisfies Rule 5.3(c)(2)'s

---

[5] As mentioned above, Christeyns and Softrol argue that additional discovery is necessary. Under Federal Rule of Civil Procedure 56(d),

> [i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion to deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

FED. R. CIV. P. 56(d). Here, the Court finds that Christeyns and Softrol failed to establish sufficient, specific reasons that more discovery is necessary, particularly given the above analysis. The Court also notes that the prejudice against Christeyns and Softrol caused by this decision, to the extent that there is any prejudice at all, is alleviated by the fact that Lavatec will remain on the verdict sheet and any liability will be apportioned essentially as they would have been if Lavatec remained in the case. Nevertheless, if Christeyns and Softrol believe more discovery would change the Court's analysis, they are of course free to file an affidavit or declaration in accordance with Rule 56, in addition to a Motion for Reconsideration.

requirements. [See Docket No. 63, ¶¶ 10-21.] Therefore, the Court will grant Lavatec's Motion to Seal.

### C.   Christeyns' Motion for Summary Judgment

Christeyns also filed a Motion for Summary Judgment, in which it seeks a ruling limiting the types of damages that Clean Green can seek in this case. [Docket No. 81-2.] Christeyns' Motion relies heavily on the Supply Agreement between it and Clean Green, which has a Limitation of Liability clause, a merger clause, and a Massachusetts choice of law clause. [See id. at 6-7.] The Limitation of Liability clause precludes either party from seeking "non-direct damages." [Id. at 6.] Christeyns argues that this limitation, when considered in concert with the merger clause, precludes many of the damages sought by Clean Green, including "extra expenses incurred, additional stain washes, personnel, sales and marketing, equipment repairs, lost revenue, and lost expenses." [Id. at 7 (quoting Interpleader Complaint).]

However, Clean Green argues that the Limitation of Liability clause is invalid under Massachusetts law. Specifically, the First Circuit has affirmed that, where "allegations of misrepresentation or willful repudiation" exist, a contract provision such as the one at issue here will not apply. See Cambridge Plating Co. v. NAPCO, 876 F. Supp. 326, 338-39 (D. Mass. 1995) (aff'd in part, rev'd in part on other

17

grounds, 85 F.3d 752, 768 (1st Cir. 1996)). Clean Green alleges that Christeyns engaged in both misrepresentation and willful repudiation. Specifically, Clean Green alleges that Christeyns provided a used system when in fact that parties had bargained for a new system. [See Docket No. 84, at 3-4.] And after problems with the system arose, Clean Green alleges that Christeyns failed to timely respond to Clean Green's requests for help, as their agreement would have required them to do. [See id. at 4-5.] Moreover, Clean Green claims that Christeyns deliberately destroyed the control card, which would have contained information useful to determining the cause of the Dispensing System's malfunction. [Id.] Christeyns denies these allegations, in addition to relying on the merger clause with respect to the issue of whether it was obligated to provide a new Tunnel Washer. [See Docket No. 92.]

The Court also notes that discovery with respect to Clean Green's claims against Christeyns is still at a relatively early stage. [See Docket No. 84, at 11-12.] Christeyns claims that this is irrelevant because the "unambiguous terms of the Supply Agreement" explicitly restrict Clean Green's available damages. [Docket No. 92, at 4-5.] However, as discussed above, the validity of the Supply Agreement is brought into question by Clean Green's claims. This Motion is rife with genuine issues of material fact, many of which require additional discovery.

18

Therefore, the Court finds that any outstanding discovery issues do, in fact, need to be resolved for purposes of this issue.

In sum, the Court will deny Christeyns' Motion for Summary Judgment because there are genuine issues of material fact with respect to the enforceability of the Supply Agreement.[6]

## VI. CONCLUSION

For the reasons expressed above, the Court will grant Lavatec's Motion for Summary Judgment [Docket No. 61] and Motion to Seal [Docket No. 63]. The Court will deny Christeyns' Motion for Summary Judgment. [Docket No. 81.] An accompanying Order shall issue.

October 22, 2020

                                            s/Renée Marie Bumb
                                            RENÉE MARIE BUMB
                                            United States District Judge

---

[6] The Court further notes that the parties dispute precisely which damages would qualify as "non-direct damages." [See Docket No. 81-2, at 10-12; Docket No. 84, at 9-11.] Because it is unclear whether or not the "non-direct damages" limitation will even apply in this case — after all, this depends on whether the Supply Agreement is valid or not — the Court will not decide this issue at this time. To do so would constitute an advisory opinion. However, the Court will certainly resolve the issue prior to the trial, should doing so be necessary.